

1

2

3

4

5

6

7

8                 **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 FRED WAYNE GILBERT,                No. CIV S-09-0209-MCE-CMK-P

12            Plaintiff,

13       vs.                    FINDINGS AND RECOMMENDATIONS

14 SUSAN HUBBARD, et al.,

15            Defendants.

16 _____/

17          Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18 to 42 U.S.C. § 1983.   Pending before the court is defendants' motion for summary judgment

19 (Doc. 63).

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

# I. BACKGROUND

## A.   Plaintiff's Allegations

Plaintiff names the following as defendants:  Susan Hubbard, Claude Finn, C. Wright, M. Fox, J. Simmons, and Brady.  Plaintiff alleges that he was received by the CDCR at the Deuel Vocational Institution ("DVI") on April 21, 2008.  He states that, pursuant to procedures enacted by the director of the CDCR, plaintiff was given a "3355-(a) medical examination" upon his arrival and found to be clear of any chronic diseases.  He adds:

> On April 21, 2008, plaintiff was subjected to poor sanitation, an unconstitutional medical system, poor health care, and prison over-crowding which was the primary cause of the substandard medical care that plaintiff received on May 25, 2008, at DVI.

According to plaintiff, on May 23, 2008, his right foot became infected due to "contagious germs and poor sanitation 'staph poisoning.'"  He states that, by May 25th, a toe on his right foot had become swollen, causing him severe pain.  Plaintiff claims that, due to the severe pain, he lost consciousness upon standing up in his cell, causing him to fall and injure his head.  Plaintiff states that, immediately after he regained consciousness, defendant Wright was notified and became aware of plaintiff's need for medical attention.  He adds that defendant Wright stated he would inform the medical staff of his needs.

Plaintiff states that defendants Simmons and Brady, who are prison medical personnel, were made aware of his medical needs but nonetheless failed to "provide prompt medical treatment. . . ."  Plaintiff claims that he was hospitalized on May 28, 2008, as a result of the alleged delay in providing treatment.

He claims that defendant Fox, the chief medical officer, is liable for failing to properly train defendants Simmons and Bradley.  He states that defendant Wright is responsible for failing to ensure that plaintiff received proper medical care.  According to plaintiff, defendant Finn is responsible by virtue of his role as prison warden, respectively.

/ / /

**B.**   <u>Defendants' Evidence</u>

Defendants' motion for summary judgment is supported by their declarations, portions of plaintiff's prison file, and excerpts from plaintiff's deposition.  Defendants' evidence shows:

1. At all relevant times, plaintiff was an inmate at DVI.

2. On April 21, 2008, plaintiff arrived at DVI and was examined by Clair Calamayan, a registered nurse.

3. On April 29, 2008, plaintiff was examined by A. Boatsaw, M.D.,who observed dry skin on the plantar aspect of plaintiff's feet and sores between his toes.  Dr. Boatsaw prescribed Tolnaflate 1% cream for these conditions.

4. On May 18, 2008, plaintiff submitted a medical call slip complaining that his athlete's foot was not healing and that he was in pain.

5. Plaintiff was examined on May 20, 2008, by C.L. Doud, a registered nurse, who diagnosed athlete's foot and continued the prescription for Tolnaflate cream.

6. On May 25, 2008, plaintiff hit his head and lost consciousness.  Upon regaining consciousness, plaintiff asked another inmate to bring an officer to his cell for assistance.

7. Though plaintiff's request for medical attention was relayed to the prison's triage medical personnel, medical personnel did not respond until May 28, 2008, at which time plaintiff was treated at the prison medical facility and at an outside hospital.

<u>Hubbard</u>

1. At all relevant times, Hubbard was the Director of the Division of Adult Institutions for the California Department of Corrections and Rehabilitation.

2. Hubbard did not have any authority or day-to-day control over any operations, including medical operations, at DVI during the times relevant in this case.

<u>Finn</u>

1. At all relevant times, Finn was the Acting Warden at DVI.

2. Finn played no role in plaintiff's medical care at DVI.

/ / /

3

Fox

1.    At all relevant times, Fox was the Chief Medical Officer at DVI.

2.    Fox played no role in plaintiff's medical care at DVI.

3.    Fox was not working on May 24, 25, or 26, 2008.

Brady

1.    At all relevant times, Brady was a senior registered nurse III at DVI.

2.    Brady played no role in plaintiff's medical care at DVI.

3.    Brady  was not working on May 24, 25, or 26, 2008.

Simmons

1.    At all relevant times, Simmons was a senior registered nurse II at DVI.

2.    Between 2008 and the present, Simmons answered the phone in the prison's Triage and Treatment Area ("TTA").  When answering the TTA phone, Simmons would either examine the inmate personally, or accompany another nurse who would examine the inmate.

3.    Simmons did not examine plaintiff between May 24, 2008 and May 28, 2008, and did not answer the TTA phone during that period.

Wright

1.    At all relevant times, Wright was a correctional officer at DVI.

2.    When responding to an inmate's request for medical attention, Wright followed the following procedure: first, he visually inspects the inmate's condition, gathering as much information as possible to relay to medical staff; second, he contacts a nurse at the TTA either by phone call or by radio if the inmate's condition is critical.

3.    Wright had no control over the timing of medical services after making the call to the TTA nurse.

4.    On May 25, 2008, Wright came to plaintiff's cell door at the request of another inmate after plaintiff had fallen.  Wright visually inspected plaintiff and listened as plaintiff explained his injuries.  Wright then left plaintiff's cell and called the TTA by phone.

5.    After calling the TTA, Wright had no contact with plaintiff on May 25, 2008.

/ / /

## II.  STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/ / /

/ / /

# III.  DISCUSSION

In their motion for summary judgment, defendants argue: (1) plaintiff cannot maintain an Eighth Amendment claim against defendants Brady, Finn, Fox, Hubbard, and Simmons who are supervisory defendants, where they were not personally involved with the alleged constitutional violation; and (2) defendant Wright was not deliberately indifferent to plaintiff's medical needs.[1]

## A.    **Supervisory Liability**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  Iqbal, 129 S.Ct. at 1948.

/ / /

/ / /

---

[1]        Defendants also argue that they are entitled to qualified immunity.

7

1              1.       <u>Hubbard, Finn, and Simmons</u>

2              Defendants' undisputed evidence establishes that defendants Hubbard, Finn, and

3 Simmons, as supervisory personnel, were not directly responsible for plaintiff's medical

4 treatment.   It is clear that plaintiff's sole theory of liability against Hubbard, Finn, and Simmons

5 is based on respondeat superior which, under <u>Iqbal</u>, cannot form the basis for liability under

6 § 1983.  Personal involvement is required and plaintiff has not presented any evidence that

7 Hubbard, Finn, or Simmons were actually personally involved in his medical care during the

8 relevant time period.  Hubbard, Finn, and Simmons are entitled to summary judgment.

9              2.       <u>Brady and Fox</u>

10             Defendants' undisputed evidence establishes that Brady and Fox, who are also

11 supervisory personnel, were not working on May 24, 25, or 26, 2008.  Therefore, they could not

12 have had any personal involvement in plaintiff's medical care during the relevant time period.

13 Brady and Fox are also entitled to summary judgment under <u>Iqbal</u>.

14     **B.**     **<u>Deliberate Indifference to Medical Needs</u>**

15             The treatment a prisoner receives in prison and the conditions under which the

16 prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

17 and unusual punishment.  See <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>,

18 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

19 of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102

20 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See <u>Rhodes v.</u>

21 <u>Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

22 "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>,

23 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

24 when two requirements are met: (1) objectively, the official's act or omission must be so serious

25 such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

26 subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

1  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

2  official must have a "sufficiently culpable mind."  See id.

3          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

4  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

5  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

6  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

7  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

8  injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

9  1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

10 Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

11 is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

12 activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

13 Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

14         The requirement of deliberate indifference is less stringent in medical needs cases

15 than in other Eighth Amendment contexts because the responsibility to provide inmates with

16 medical care does not generally conflict with competing penological concerns.  See McGuckin,

17 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

18 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

19 1989).  The complete denial of medical attention may constitute deliberate indifference.  See

20 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

21 treatment, or interference with medical treatment, may also constitute deliberate indifference.

22 See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

23 demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

24 / / /

25 / / /

26 / / /

1           Negligence in diagnosing or treating a medical condition does not, however, give

2 rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

3 difference of opinion between the prisoner and medical providers concerning the appropriate

4 course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

5 90 F.3d 330, 332 (9th Cir. 1996).

6           Defendants' undisputed evidence shows that Wright came to plaintiff's cell door

7 on May 25, 2008, at the request of another inmate after plaintiff had fallen.  Wright then left

8 plaintiff's cell and called the TTA by phone.  Wright's call to the TTA was answered by an

9 unnamed medical staffer.  The evidence also shows that, while plaintiff appears not to have been

10 treated immediately, he was treated three days later on May 28, 2008, by prison doctors and other

11 doctors at an outside hospital.  Given these facts, the court finds that it is impossible for plaintiff

12 to establish that Wright was indifferent, deliberately or otherwise, to plaintiff's medical needs.

13 To the contrary, Wright affirmatively responded to plaintiff's medical needs by placing a call to

14 the TTA.  Wright cannot be held responsible for any delay following his call to the TTA.  Wright

15 is also entitled to summary judgment.

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

**IV.  CONCLUSION**

In essence, plaintiff's claim is based on the delay between Wright's call to the TTA on May 25, 2008, and the treatment he received on May 28, 2008.  Even assuming that the named defendants are responsible for this delay – which the evidence shows they are not – delay in providing medical treatment is actionable only where there is evidence that they delay caused further injury.  No such evidence has been presented here.

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion for summary judgment (Doc. 63) be granted;

2.      All other pending motions be denied as moot; and

3.      The Clerk of the Court be directed to enter judgment in favor of defendants and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


 DATED:  September 2, 2011

                                                    CRAIG M. KELLISON
                                                    UNITED STATES MAGISTRATE JUDGE